1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MATTHEW SIMPSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNPOWER CORPORATION, PETER FARICY, GUTHRIE DUNDAS, and ELIZABETH EBY,<br><br>Defendants. | Case No.<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Matthew Simpson ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to himself and upon information and belief as to all other matters, based upon the investigation conducted by and through his attorneys, which included, among other things, a review of documents filed by Defendants (as defined below) with the United States Securities and Exchange Commission (the "SEC"), news reports, press releases issued by Defendants, and other publicly available documents, as follows:

## INTRODUCTION

1.      Plaintiff brings claims against all Defendants for violating Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated by the SEC, 17 C.F.R. § 240.10b-5, on behalf of the class of persons and entities (the "Class") that purchased or otherwise acquired the securities of SunPower Corporation ("SunPower" or the "Company") between March 9, 2023 and October 24, 2023 (the "Class Period").

2.      SunPower is a solar technology and energy services provider.

3.      On July 26, 2023, SunPower issued a press release announcing the Company's preliminary unaudited Q2 2023 financial results.  Among other things, the Company reduced its guidance for adjusted EBITDA for the year.

4.      On this news, the Company's share price fell $1.77 per share, or %, to close at $9.45 per share on July 26, 2023.

5.      Then, on October 24, 2023, after the market closed, SunPower filed a Form 8-K with the SEC (the "October 24 8-K") revealing a material weakness in its internal controls and the impending restatement of certain financial statements.  The October 24 8-K disclosed that investors should no longer rely upon the audited financial statements included in the Company's Form 10-K for the period ended January 1, 2023 (the "2022 10-K"), the unaudited financial

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

statements included in the Company's Form 10-Q for the period ended April 2, 2023 (the "Q1 2023 10-Q"), the unaudited financial statements included in the Company's Form 10-Q for the period ended July 2, 2023 (the "Q2 2023 10-Q"), and any communications describing or based upon those financial statements.  The Company added that it planned to restate the 2022 10-K, the Q1 2023 10-Q, and the Q2 2023 10-Q.  SunPower explained that it had overstated the value of consignment inventory of certain microinverter components, causing it to understate the associated cost of revenue.  The October 24 8-K further revealed that consequently, SunPower's management had concluded that a material weakness existed in the Company's internal control over financial reporting.

6.     On this news, the Company's share price fell $0.90 per share, or 18.1%, to close at $4.06 per share on October 25, 2023, on unusually high trading volume.

7.     Throughout the Class Period, Defendants made materially false and/or misleading statements and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants misled investors by failing to disclose that: (1) due to a material weakness in its internal control over financial reporting, the Company had inaccurately reported cost of revenue and inventory metrics; (2) as a result of the foregoing, the Company was reasonably likely to incur significant charges to restate prior reporting; and (3) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act, 15 U.S.C. § 78aa(c).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Defendants' wrongful acts also arose in and emanated from, in part, this District, including the dissemination of materially misleading statements into this District and the purchase of the Company's securities by members of the Class who reside in this District.  Additionally, the Company's principal offices are located in this District.

11.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**THE PARTIES**

**A.      Plaintiff**

12.     Plaintiff Matthew Simpson, as set forth in the accompanying certification, incorporated by reference herein, purchased SunPower securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

**B.      Defendants**

13.     Defendant SunPower is incorporated under the laws of Delaware with principal offices located in Richmond, California.  SunPower's common stock trades on the Nasdaq Global Select Market ("NASDAQ") under the symbol "SPWR."

14.     Defendant Peter Faricy was the Company's Chief Executive Officer ("CEO") at all relevant times.  Faricy signed several of SunPower's SEC filings during the Class Period, including the 2022 10-K.

15.     Defendant Guthrie Dundas was the Company's Interim Chief Financial Officer from August 29, 2022 through May 29, 2023.  Dundas signed several of SunPower's SEC filings during the Class Period, including the 2022 10-K and the Q1 2023 10-Q.

16.     Defendant Elizabeth Eby has served as the Company's Chief Financial Officer since May 30, 2023.  Eby signed several of SunPower's SEC filings during the Class Period, including the Q2 2023 10-Q.

17.     Defendants Faricy, Dundas, and Eby (collectively, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC; press releases; and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS

18.     The Class Period begins on March 9, 2023.  On that date, SunPower filed the 2022 10-K, which Faricy and Dundas signed.  Therein, the Company reported the following about the cost of revenues:

| (In thousands, except percentages) | Fiscal Year Ended | | | | |
| | January 1, 2023 | % Change | January 2, 2022 | % | January 3, 2021 |
|---|---|---|---|---|---|
| **Cost of Revenues** | | | | | |
| Total cost of revenues | $1,377,169 | 53% | $902,718 | 23% | $ 733,371 |
| **Gross Margin** | | | | | |
| Total gross | 21% | | 20% | | 16% |

***Our total cost of revenues increased by 53% during fiscal 2022 as compared to fiscal 2021***, as a result of organic revenue growth from our residential businesses across all channels and the Blue Raven acquisition in the fourth quarter of 2021, as well as increasing material, freight, and labor costs due to inflationary pressures. This was partially offset by a decrease in cost of revenues as a result of the wind-down of our Light Commercial business beginning in the first quarter of fiscal 2022.[1]

19.     Regarding inventories, the Company reported:

| Inventories | As of | |
| (In thousands) | January 1, 2023 | January 2, 2022 |
|---|---|---|
| Photo-voltaic modules | $ 156,292 | $ 130,671 |
| Microinverters | 46,088 | 24,040 |
| Energy Storage | 63,327 | 26,849 |
| Other solar power system component materials | 51,108 | 32,872 |
| Inventories[1] | $ 316,815 | $ 214,432 |
| [1]Photovoltaic modules are classified as finished goods, while the remaining components of total inventories are classified as raw materials. | | |

---

[1] All emphases included herein are added unless otherwise noted.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

20. In the 2022 10-K, the Company also included a report on its internal control over financial reporting, which stated:

> Management is responsible for establishing and maintaining adequate internal control over financial reporting, as defined in Exchange Act Rule 13a-15(f). Management conducted an evaluation of the effectiveness of our internal control over financial reporting using the criteria described in Internal Control-Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (2013 framework) ("COSO"). ***Based on this evaluation, management concluded that our internal control over financial reporting was effective as of January 1, 2023 based on the criteria described in Internal Control-Integrated Framework issued by COSO.*** Management reviewed the results of its assessment with our Audit Committee.

21. Both Faricy and Dundas signed certifications under the Sarbanes-Oxley Act that were attached to the 2022 10-K ("SOX Certifications"). The certifications stated:

> 5 I have reviewed this Annual Report on Form 10-K of SunPower Corporation;
>
> ***2 Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;***
>
> ***3 Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;***
>
> 4 The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15I and 15d-15I) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:
>
> (5) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;
>
> ***(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;***

I Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

*5      The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):*

*(5) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and*

*(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.*

22.     On May 3, 2023, SunPower filed the Q1 2023 10-Q with the SEC, which Dundas signed. In the Q1 2023 10-Q, SunPower reported the following regarding cost of revenues:

| (In thousands, except percentages) | Three Months Ended | | |
|---|---|---|---|
| | April 2, | April 3, | % Change |
| **Cost of Revenue** | | | |
| Total cost of revenues | $ 376,767 | $ 277,968 | 36% |
| **Gross Margin** | | | |
| Total gross margin | 15% | 21% | (6)% |

23.     Regarding inventories, the Q1 2023 10-Q reported the following:

| Inventories | As of | |
|---|---|---|
| (In thousands) | April 2, 2023 | January 1, 2023 |
| Photo-voltaic modules | $ 206,083 | $ 156,292 |
| Microinverters | 65,388 | 46,088 |
| Energy Storage Systems | 59,996 | 63,327 |
| Other solar power system component materials | 50,380 | 51,108 |
| Inventories[1] | $ 381,847 | $ 316,815 |
| [1]Photovoltaic modules are classified as finished goods, while the remaining components of total inventories are classified | | |

24.     Faricy and Dundas signed SOX Certifications that were appended to the Q1 2023 10-Q.  The SOX Certifications were substantively similar or the same as those attached to the 2022 10-K, discussed *supra* at ¶ 21.

25.     The above statements identified in ¶¶ 18-24 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors that (1) due to a material weakness in its internal control over financial reporting, the Company had inaccurately reported cost of revenue and inventory metrics; (2) as a result of the foregoing, the Company was reasonably likely to incur significant charges to restate prior reporting; and (3) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**THE TRUTH BEGINS TO EMERGE**

26.     On July 26, 2023, SunPower issued a press release announcing the Company's preliminary unaudited Q2 2023 financial results.  The press release stated, in relevant part:

SunPower [. . .] today provided preliminary unaudited financial results for the second quarter ending July 2, 2023.

"Demand in the second quarter has weakened more than expected in the Southeast and Southwest where macroeconomic uncertainty and higher interest rates have

slowed our top-of-funnel lead generation and sales bookings," said Peter Faricy, SunPower CEO. "To quickly adapt to prevailing market conditions and help ensure SunPower maintains its competitive edge, we are reducing our cost structure. Although we've seen improvements in sales growth in June and July, we've made the decision to reduce our labor costs and are taking additional measures to improve operational efficiency across the board. We believe that these actions will position the company for success as market conditions improve."

\*\*\*

The company reduced 2023 guidance for GAAP net loss to ($90) million-($70) million.

To accurately reflect its assessment of current and near-future customer demand as well as its mitigating actions to reduce cost structure, the company has reduced its 2023 customer guidance to 70,000–90,000 incremental customers, noting that more than 70% of the projected installations in the second half of 2023 are already accounted for through the execution of existing backlog. This includes the expected recognition of all California NEM 2.0 backlog by year-end and stronger than expected New Homes bookings.

Guidance for Adjusted EBITDA per customer before platform investment was reduced to $1,450-$1,650 to reflect installation costs that are higher than anticipated, as well as the effects of lower market pricing and higher levels of inventory carried this year following the supply chain disruptions of 2022.

The company also expects to reduce Platform Investment to $50 million-$70 million for the year.

Guidance for Adjusted EBITDA for the year was reduced to $55 million-$75 million.

27.    On this news, the Company's share price fell $1.77 per share, or %, to close at $9.45 per share on July 26, 2023.

28.    On August 2, 2023, SunPower filed the Q2 2023 10-Q with the SEC, which Eby signed.  In the Q2 2023 10-Q, SunPower reported the following regarding costs of revenues:

| (In thousands, except | Three Months Ended | | | Six Months Ended | | |
| --- | --- | --- | --- | --- | --- | --- |
| | July 2, | July 3, | % | July 2, 2023 | July 3, 2022 | % |
| **Cost of Revenues** | | | | | | |
| Total cost of revenues | $ | $ | 19% | $769,667 | $614,241 | 25% |
| **Gross Margin** | | | | | | |
| Total gross margin | 14% | 20% | (6)% | 15% | 20% | (5)% |

29.     Regarding inventory, the Company reported the following:

| (In thousands) | As of | |
| --- | --- | --- |
| | July 2, 2023 | January 1, |
| Photovoltaic modules | $ 244,068 | $ 156,292 |
| Microinverters | 68,832 | 46,088 |
| Energy storage systems | 58,670 | 63,327 |
| Other solar power system component materials | 52,470 | 51,108 |
| Inventories[1] | $ 424,040 | $ 316,815 |
| [1]Photovoltaic modules are classified as finished goods, while the remaining components of total inventories | | |

30.     Eby and Dundas signed SOX Certifications that were appended to the Q2 2023 10Q.  The SOX Certifications were substantively similar or the same as those attached to the 2022 10-K, discussed *supra* at ¶¶ 21, 24.

### THE TRUTH FULLY EMERGES

31.     On October 24, 2023, SunPower filed a Form 8-K with the SEC announcing that its previous financial statements could not be relied upon.  The October 24 8-K stated, in relevant part:

> On October 19, 2023, the Audit Committee (the "Audit Committee") of the Board of Directors (the "Board") of SunPower Corporation (the "Company"), based upon the recommendation of management, determined that the Company's (i) audited financial statements included in the Company's Annual Report on Form 10-K for the period ended January 1, 2023, filed with the U.S. Securities and Exchange Commission (the "SEC") on March 10, 2023 (the "Form 10-K"), (ii) unaudited financial statements included in the Company's Quarterly Report on Form 10-Q for the quarterly period ended April 2, 2023, filed with the SEC on May 3, 2023 (the "Q1 2023 Form 10-Q"), and (iii) unaudited financial statements included in the Company's Quarterly Report on Form 10-Q for the quarterly period ended July 2, 2023, filed with the SEC on August 2, 2023 (the "Q2 2023 Form 10-Q," and collectively, the "Affected Periods"), as well as the relevant portions of any communication which describe or are based on such financial statements, should no longer be relied upon.  The Company plans to restate, as soon as practicable, the financial statements for the Affected Periods in amendments to the Form 10-K, the Q1

**2023 Form 10-Q, and the Q2 2023 Form 10-Q, respectively (collectively, the "Restatement").**

**In connection with the preparation of the financial statements, the Company preliminarily determined that the value of consignment inventory of microinverter components at certain third-party locations had been overstated in the Affected Periods in the range of approximately $16 million to $20 million, resulting in the associated cost of revenue being understated.** At this time, the Company has not fully completed its review, and the expected financial impact of the errors described above is preliminary and subject to change. Additionally, the Company is correcting other immaterial errors in the Affected Periods**.**

**Upon evaluation of the impact to Affected Periods, the Company's management has concluded that in light of the matters described above, a material weakness exists in the Company's internal control over financial reporting.** The Company's remediation plan with respect to such material weakness will be described in more detail in the Company's amended Form 10-K.

**The Company's management also has concluded that the Company's disclosure controls and procedures and internal control over financial reporting were not effective as of January 1, 2023 and the Company's disclosure controls and procedures were not effective as of April 2, 2023 and July 2, 2023.** In addition, as a result of the material weakness, Ernst & Young LLP, the Company's independent registered public accounting firm for the year ended January 1, 2023 ("EY"), has determined that its report on internal control over financial reporting as of January 1, 2023, dated March 9, 2023 and included in the Company's Annual Report on Form 10-K for the year ended January 1, 2023 filed with the SEC on March 10, 2023, will be revised to an adverse opinion that internal control over financial reporting was ineffective and reissued.

32.     On this news, the Company's share price fell $0.90 per share, or 18.1%, to close at $4.06 per share on October 25, 2023, on unusually high trading volume.

**LOSS CAUSATION**

33.     Defendants' wrongful conduct directly and proximately caused the losses suffered by Plaintiff and the Class as described in ¶¶ 27, 32.

34.     During the Class Period, Plaintiff and the Class purchased SunPower securities at artificially inflated prices.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## ADDITIONAL INDICIA OF SCIENTER

35.  Defendants knew that each of the public documents and statements identified above and issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. The Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding SunPower's financials, their control over, and/or receipt and/or modification of the Company's materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning SunPower's operations, participated in the fraudulent scheme alleged herein.

## CLASS ACTION ALLEGATIONS

36.  Plaintiff brings this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all persons and entities that purchased or otherwise acquired SunPower securities between March 9, 2023 and October 24, 2023, inclusive, and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

37.  The Class is so numerous that joinder of all members is impracticable. Throughout the Class Period, millions of SunPower's shares traded on the NASDAQ. Consequently, the number of Class members is believed to be in the thousands and Class members are likely scattered across the United States.

38.     The precise number of Class members is unknown to Plaintiff at this time but could be determined following discovery as Record owners and other members of the Class may be identified based on documents possessed by SunPower or its transfer agent.  Those persons and entities may be notified of the pendency of this action as is typically done in securities class actions.

39.     Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of the federal securities laws.  Plaintiff does not have any interests adverse to the Class.

40.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

41.     Common questions of law and fact predominate over questions affecting any individual Class member.  The common questions include:

    a.   whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of SunPower;

    b.   whether Defendants thereby violated the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5; and

    c.   whether and to what extent Class members have been damaged by Defendants and the proper measure of damages.

42.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for several reasons.  The prosecution of separate actions by

individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.  Also, adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interest of other members or substantially impair or impede their ability to protect their interests.  Moreover, damages suffered by individual Class members may be small, making it overly expensive and burdensome for individual Class members to pursue redress on their own and the number of Class members makes joinder impracticable.

43.     There will be no difficulty in the management of this litigation as a class action.

44.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## FRAUD ON THE MARKET

45.     The market for SunPower's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, SunPower's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of SunPower's securities and market information relating to SunPower, and have been damaged thereby.

46.     During the Class Period, the artificial inflation of SunPower's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about SunPower's business, prospects, and operations.  These material

misstatements and/or omissions created an unrealistically positive assessment of SunPower and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company's shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result. At all relevant times, the market for SunPower's securities was an efficient market for the following reasons, among others:

    a.      SunPower shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market

    b.      As a regulated issuer, SunPower filed periodic public reports with the SEC and/or the NASDAQ;

    c.      SunPower regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

    d.      SunPower was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

47.     As a result of the foregoing, the market for SunPower's securities promptly digested current information regarding SunPower from all publicly available sources and reflected such information in SunPower's share price.  Under these circumstances, all purchasers of SunPower's securities during the Class Period suffered similar injury through their purchase of SunPower's securities at artificially inflated prices and a presumption of reliance applies.

48.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

**NO SAFE HARBOR**

49.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  In the alternative, to the extent that the statutory safe harbor is determined to apply

to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of SunPower who knew that the statement was false when made.

## COUNT ONE

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5

### (Against All Defendants)

50.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51.     By reason of the conduct herein alleged, each Defendant named herein violated Section 10(b) of the Exchange Act and Rule 10b-5.

52.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase SunPower's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

53.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for SunPower's securities in violation of Section 10(b)

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

54.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about SunPower's financial well-being and prospects, as specified herein.

55.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of SunPower's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about SunPower and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

56.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of

the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

57.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing SunPower's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

58.     As a result of the dissemination of materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of SunPower's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired SunPower's securities during the Class Period at artificially high prices and were damaged thereby.

59.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that SunPower was experiencing, which were not disclosed by Defendants, Plaintiff and other members the Class would not have purchased or otherwise acquired their SunPower securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

60.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

62.     Plaintiff and the Class have sustained damages because they purchased SunPower stock at an inflated price, which declined in value as a result of the corrective disclosures detailed herein.

**COUNT TWO**

**Violation of Section 20(a) of the Exchange Act**

**(Against the Individual Defendants)**

63.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

64.     Individual Defendants acted as controlling persons of SunPower within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the

Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

66.     As set forth above, SunPower and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against all Defendants as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as Class representatives and their counsel as Class counsel;

1    B.    Awarding compensatory damages in favor of Plaintiff and the other Class

2    members against all Defendants, jointly and severally, for all damage sustained as a result of

3    Defendants' wrongdoing, in an amount to be proven at trial;

4    C.    Awarding pre-judgment and post-judgment interest on any such monetary relief;

5    D.    Awarding Plaintiff and their counsel reasonable costs and expenses incurred in

6    this action, including counsel fees and expert fees; and

7

8    E.    Such further relief as this Court deems just and proper.

9                    **DEMAND FOR A JURY TRIAL**

10   Plaintiff hereby demands a trial by jury.

11   Dated:  December 6, 2023              Respectfully submitted,

12                                         POMERANTZ LLP

13

14                                         */s/ Jennifer Pafiti*
                                           _____
15                                         Jennifer Pafiti (SBN 282790)
                                           1100 Glendon Avenue, 15th Floor
16                                         Los Angeles, California 90024
                                           Telephone: (310) 405-7190
17                                         jpafiti@pomlaw.com

18                                         POMERANTZ LLP
                                           Jeremy A. Lieberman
19                                         (*pro hac vice* application forthcoming)
                                           J. Alexander Hood II
20                                         (*pro hac vice* application forthcoming)
                                           600 Third Avenue, 20th Floor
21                                         New York, New York 10016
                                           Telephone: (212) 661-1100
22                                         Facsimile: (917) 463-1044
                                           jalieberman@pomlaw.com
23                                         ahood@pomlaw.com

24
                                           *Attorneys for Plaintiff*
25

26

27

28